FRATE, d.b.a. Empirical Sound, Appellee,

v.

AL–SOL, INC., d.b.a. The Edge, et al., Appellants.

[Cite as *Frate v. Al-Sol, Inc.* (1999), 131 Ohio App.3d 283.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 73459.

Decided May 3, 1999.

*David G. Finley*, for appellee.

*Marlene N. Lally*, for appellants, Al–Sol, Inc., A & E Investment Co., and Alex Solomon.

*Coltman & Valore Co., L.P.A.*, and *Brian C. Cruse*, for Denise Savastano.

ROCCO, Judge.

This case is before the court on appeal from a judgment of the court of common pleas awarding compensatory damages of $19,336 plus attorney fees to appellee Michael Frate, d.b.a. Empirical Sound, on his claims for breach of a lease agreement and conversion of his sound equipment and requiring appellants, Alex Solomon, Al–Sol, Inc., d.b.a. The Edge ("Al–Sol"), and A & E Investment Company, d.b.a. The Edge ("A & E"), to indemnify their co-defendant, Denise Savastano. Appellants argue:

"I. The trial court committed prejudicial error by permitting plaintiff to maintain an action based on claims of an unregistered trade name or fictitious entity over the objections and affirmative defense of defendants–appellants.

"II. The trial court committed prejudicial error by awarding contract damages based on a contract to which defendants–appellants were not party.

"III. The trial court committed prejudicial error in granting judgment for indemnification in favor of co–defendant Savastano and against all three defendants–appellants where the only cross–claim pled by Savastano was against co–defendant Al–sol, Inc., only [*sic* ]."

For the following reasons, the court finds that the trial court should have dismissed appellee's claim for breach of the lease agreement because appellee lacked capacity to pursue that claim. The trial court also abused its discretion by ordering appellants A & E and Solomon to indemnify Savastano. Therefore, the judgments on Frate's claim for breach of the lease agreement, the award of attorney fees based on the lease agreement, and the judgment requiring Solomon and A & E to indemnify Savastano are reversed. The trial court's judgments on Frate's claim for conversion and the court's judgment requiring Al–Sol to indemnify Savastano are affirmed.

## PROCEDURAL HISTORY

Appellee Michael Frate originally filed his complaint on December 20, 1995, asserting claims against Solomon, Al–Sol, and A & E for breach of a rental agreement and conversion of Frate's sound equipment. Several months later, Frate amended his complaint to include claims for breach of contract and conversion against new party defendants Denise Savastano and Eric Buckner.[1] Savastano cross-claimed against Al–Sol, contending that Al–Sol should indemnify her for any liability she might have to Frate.

On the day trial was scheduled to begin, appellants moved to dismiss the amended complaint, arguing that Frate wrongfully attempted to prosecute this action under a trade name or fictitious name without having complied with the registration requirements of R.C. 1329.01. The court orally struck the motion to dismiss because it was filed without leave of court after the dispositive motion cut-off date.

A bench trial was conducted on August 14, 1997. Following the trial, on September 2, 1997, the court entered an opinion and order finding that "[t]he defendants failed to make the monthly rental payments upon being due, and were therefore in default under the lease" agreement with Frate. The court further found that Savastano and Buckner entered into the lease agreement as agents of The Edge's manager, Donald Kollecker, and that Kollecker had apparent authority to act for Solomon, A & E and Al–Sol; therefore, Solomon, A & E, and Al–Sol were bound by the lease agreement. Finally, the court found defendants had converted Frate's equipment. The court entered judgment in the amount of $19,336 against all defendants jointly and severally and granted judgment in favor of defendant Savastano on her cross-claim against defendants Solomon, A & E, and Al–Sol. The court also awarded Frate a reasonable attorney fee, the amount of which was to be determined at a future hearing.

On October 24, 1997, the court awarded fees of $4,000 against Al–Sol, A & E, and Solomon. In addition, the court appointed a receiver to take possession of, manage, and sell these defendants' nonexempt property to satisfy the judgment. This appeal was timely[2] filed on November 5, 1997.[3]

---

1. Buckner did not answer the amended complaint and never entered an appearance.

2. "It is well-settled law that a judgment deferring final adjudication of a request for attorney fees is not a final appealable order." *Ft. Frye Teachers Assn. v. Bd. of Edn.* (1993), 87 Ohio App.3d 840, 843, 623 N.E.2d 232, 234. Thus, the September 2, 1997, judgment was not final or appealable until the court determined the amount of the attorney's fee award on October 24, 1997.

3. An announced 2–1 decision in this appeal was vacated after one member of the majority recused himself. The matter was reassigned to this panel for rehearing on the merits.

## LAW AND ANALYSIS

### A. Appellee's Capacity to Sue Under R.C. 1329.10(B)

In their first assignment of error, appellants assert the trial court should have dismissed appellee's complaint because appellee lacked capacity to sue pursuant to R.C. 1329.10, which provides:

"(B) No person doing business under a trade name or fictitious name shall commence or maintain an action in the trade name or fictitious name in any court in this state or on [4] account of any contracts made or transactions had in the trade name or fictitious name until it has first complied with section 1329.01 * * * but upon compliance, such an action may be commenced or maintained on any contracts and transactions entered into prior to compliance."

R.C. 1329.01(C) requires any person doing business under a "fictitious name" [5] to report the use of the name to the secretary of state unless the name is registered as a "trade name" [6] under R.C. 1329.01(B).

Notably, R.C. 1329.10(B) does not preclude the commencement or maintenance of an action merely because business was transacted in an unregistered trade or fictitious name. · Instead, it provides that an action may not be commenced or maintained *until* the name is registered. Upon registration, an action may be commenced or maintained on any contracts or transactions entered into prior to compliance. *New Method Textiles, Inc. v. TGI Friday's, Inc.* (June 28, 1994), Franklin App. No. 93APG10–1360, unreported, 1994 WL 312915.

This court has previously described the effect of R.C. 1329.10(B) as a denial of "standing," *MBA Realty v. Little G, Inc.* (1996), 116 Ohio App.3d 334, 337–338, 688 N.E.2d 39, 41–42. However, the statute more accurately denies the user of a fictitious name the *capacity* to sue. *Buckeye Foods v. Bd. of Revision* (1997), 78 Ohio St.3d 459, 461, 678 N.E.2d 917, 918–919; *Ebner v. Caudill* (1994), 93 Ohio App.3d 785, 786–787, 639 N.E.2d 1231, 1232–1233. Capacity to sue may be raised by "specific negative averment" in a responsive pleading. Civ.R. 9(A); see *Logan & Co., Inc. v. Cities of Am., Inc.* (1996), 112 Ohio App.3d 276, 279, 678

---

4. This quotation is taken from Baldwin's Revised Code Annotated; Page's Ohio Revised Code Annotated contains a nonsensical "an" in this position. A review of the sessions law from the most recent amendment to R.C. 1329.10 in 1978 confirms that the Baldwin's version is the correct one. R.C. 1.53.

5. " 'Fictitious name' means a name used in business or trade that is fictitious and that the user has not registered or is not entitled to register as a trade name. It includes the name of any domestic of foreign limited partnership that is formed under or subject to chapter 1782. of the Revised Code." R.C. 1329.01(A)(2).

6. " 'Trade name' means a name used in business or trade to designate the business of the user and to which the user asserts a right to exclusive use." R.C. 1329.01(A)(1).

N.E.2d 613, 614–615; *New Method Textiles, Inc. v. TGI Friday's, Inc., supra.* Failure to raise the plaintiff's lack of capacity to sue in the answer waives the issue. *Logan*, 112 Ohio App.3d at 279, 678 N.E.2d at 614–615; *Valentour v. Alexander* (1994), 96 Ohio App.3d 718, 645 N.E.2d 1292; but, see, *GMS Mgmt. Co. v. Axe* (1982), 5 Ohio Misc.2d 1, 10, 5 OBR 53, 62–63, 449 N.E.2d 43, 52.

■ In this case, appellants specifically raised the issue of appellee's capacity to sue as the third affirmative defense in their original answer and their answer to the amended complaint; therefore, appellants preserved the issue for a court decision.

Appellee claims that appellants waived the issue of appellee's capacity by failing to raise it by dispositive motion before the court's dispositive motion deadline. He asserts that a contrary result would permit appellants to "sandbag" him by raising the issue on the eve of trial; however, "sandbagging" is not an issue here. Having raised plaintiff's capacity to sue in the pleadings, appellants even could have presented evidence and argument on this issue at trial. See *Cheliotis v. Gould* (Dec. 14, 1994), Montgomery App. No. 14471, unreported, 1994 WL 701963; *Fisco v. Chisholm* (May 7, 1987), Cuyahoga App. No. 52111 and 52112, unreported, 1987 WL 11193. Therefore, the motion to dismiss was not untimely.

■ Appellee had ample opportunity to report his use of the name "Empirical Sound" to the Secretary of State before trial. Cf. *MBA Realty v. Little G, Inc.*, 116 Ohio App.3d at 337, 688 N.E.2d at 41 (motion to dismiss properly denied where plaintiff-appellee registered business name during pendency of case). Nonetheless, evidence attached to appellants' motion to dismiss demonstrated that appellee did not register "Empirical Sound" as a trade name or report his use of "Empirical Sound" as a fictitious name before or during the pendency of this action. Accordingly, the only remaining issue is whether the failure to register or report precluded the particular claims presented here.

■ There is a surprising dearth of authority regarding the types of claims precluded by R.C. 1329.10 even though the statute has been in force in exactly the same terms for more than twenty years. Legislative intent is, of course, the court's paramount concern in construing this (or any) statute. " 'In determining legislative intent, the court first looks to the language in the statute and the purpose to be accomplished.' * * * The literal language of the pertinent statutes must be enforced whenever possible. " *State ex rel. Auglaize Mercer Community Action Comm., Inc. v. Ohio Civ. Rights Comm.* (1995), 73 Ohio St.3d 723, 726, 654 N.E.2d 1250, 1253. "[C]ourts do not have authority to ignore the plain language of a statute under the guise of statutory interpretation or liberal or

narrow construction." *State ex rel. Massie v. Bd. of Edn.* (1996), 76 Ohio St.3d 584, 588, 669 N.E.2d 839, 843.

The plain language of R.C. 1329.10 precludes two classes of claims until a fictitious name is reported or a trade name is registered: (1) actions commenced or maintained in a trade or fictitious name, and (2) actions on account of any contracts made or transactions had in the trade or fictitious name. Appellee commenced this action in his own individual name, so this action does not belong to the first class of precluded claims.

Appellee's claim for breach of the lease agreement was based on a contract made in the name of Empirical Sound. This is plainly an "action * * * on account of any contracts made * * * in the * * * fictitious name," which appellee lacked the capacity to pursue under R.C. 1329.10(B) until he complied with R.C. 1329.01. The trial court erred by failing to dismiss this claim.

However, appellee's tort claim for conversion requires a different analysis. No contract or transaction is necessary to support a tort claim for conversion of personal property, so this claim is not one of the second class of precluded claims.[7] Therefore, the court properly denied the motion to dismiss this claim.[8]

### B. Appellants' Liability for Indemnity

In their third assignment of error, appellants complain that the trial court erred by requiring all three of them to indemnify their codefendant, Denise Savastano. Appellants urge that Savastano's cross-claim only sought indemnity from Al–Sol, Inc., so only Al–Sol could be found liable.[9]

Although Savastano has not responded to appellants' brief, Frate urges that appellants' liability for indemnity was tried by implied consent, so the issue should be treated as if it were raised by the pleadings. Civ.R. 15(B).

---

7. Future cases may require the court to address close questions about whether an action is filed "on account of" a contract or transaction in a fictitious name. The dictionary definition holds that "on account of" is synonymous with "because of" or "for the sake of," and implies some form of causation, but the phrase has been found to be "ambiguous as to which form of causation is intended." *Commr. of Internal Revenue v. Miller* (C.A.4, 1990), 914 F.2d 586. This issue need not be addressed here because a tort action for conversion is not "caused" by a contract or transaction under any theory of causation.

8. Our determination that the trial court should have dismissed the breach of contract claim renders moot appellants' second assignment of error, which contends that the trial court erroneously concluded appellants were bound by the lease agreement. Therefore, we need not address this issue. See App.R. 12(A)(1)(c).

9. Because the outcome of this assignment of error will not affect Al–Sol's liability for indemnity, Al–Sol lacks standing to appeal this issue. Therefore, our references to "appellants" in the following discussion pertain only to Alex Solomon and A & E.

"An implied amendment of the pleadings under Civ.R. 15(B) will not be permitted where it results in substantial prejudice to a party. Various factors to be considered in determining whether the parties impliedly consented to litigate an issue include: whether they recognized that an unpleaded issue entered the case; whether the opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were to be tried on a different theory; and, whether the witnesses were subjected to extensive cross-examination on the issue." *State ex rel. Evans v. Bainbridge Twp. Trustees* (1983), 5 Ohio St.3d 41, 5 OBR 99, 448 N.E.2d 1159, paragraph one of the syllabus.

In this case, appellee has not demonstrated that the parties impliedly consented to try the issue of appellants' liability for indemnity. Appellee contends that implied consent can be discerned from (1) an arbitration award requiring all three appellants to indemnify Savastano, and (2) two arguments by Savastano's counsel at trial demanding judgment for indemnity against "Solomon." Appellants' consent cannot be implied from an arbitration award, from which they appealed *de novo*. Nor can a party's consent be implied from the arguments of opposing counsel. Appellee has not pointed to any supporting evidence that was introduced at trial and that the parties clearly understood to be aimed at the unpleaded issue. Accordingly, the trial court abused its discretion by requiring Solomon and A & E to indemnify Savastano.

## CONCLUSION

The trial court's judgments in favor of Frate and against Solomon, Al–Sol, A & E, Savastano, and Buckner on Frate's claim for conversion, and the court's judgment requiring Al–Sol to indemnify Savastano, are affirmed. The judgments in favor of Frate on his claim for breach of the lease agreement, the award of attorney fees to Frate based upon the lease agreement, and the judgment requiring Solomon and A & E to indemnify Savastano, are reversed.

*Judgment accordingly.*

PATTON, P.J., and MICHAEL J. CORRIGAN, J., concur.